## STATE RESERVE BANK v. SWIFT & CO.

Circuit Court of Appeals, Eighth Circuit.
April 18, 1929.

No. 8190.

P. D. Gardiner, of Wichita, Kan. (J. R. Mayall, of Valley Center, Kan., on the brief), for appellant.

Earle W. Evans, of Wichita, Kan. (R. R. Vermilion, Joseph G. Carey, W. F. Lilleston, and Henry V. Gott, all of Wichita, Kan., on the brief), for appellee.

Before KENYON, Circuit Judge, and JOHNSON and McDERMOTT, District Judges.

JOHNSON, District Judge. In the prayer of its complaint filed in the court below against appellant and others as defendants, plaintiff appellee here, among other things prayed: "That the court determine in such manner as it may deem proper and adequate the value of said premises and the amount of rentals to be paid by plaintiff therefor during the six-year period of time commencing on the first day of April, 1926:" And that it have "such other and further relief as to the court may seem consistent and equitable in the premises."

An order pro confesso was taken against appellant, and later a decree pro confesso was entered upon the allegations of the complaint fixing the rental of the premises referred to in the prayer for the six-year period beginning April 1, 1926, and ending March 31, 1932, at $515 per month. Prior to the entry of the decree pro confesso, appellant filed a motion supported by affidavit of counsel asking that the order pro confesso taken against it be set aside. The motion was denied and the decree pro confesso entered. Appellant has assigned the refusal to set aside the order pro confesso as error; also, the entry of the decree pro confesso.

So far as necessary to state them, the facts as alleged in the complaint are as follows:

On or about the 1st day of April, 1914, appellee entered into the possession of a certain building in Wichita, Kan., under a

lease from Charles Phillips, the owner, for a term of six years ending March 31, 1920. This lease was renewed for a second term of six years ending March 31, 1926. After the renewal of the lease, another story was added to the building and leased by Charles Phillips to appellee for the remainder of the term ending March 31, 1926. Both leases contained a provision for renewal for another six-year term ending March 31, 1932. These provisions were duly complied with by appellee on the 29th day of December, 1925, and the lease thereby renewed for said term ending March 31, 1932. Instead of a definite sum stipulated to be paid as rent for the premises during the term beginning April 1, 1926, the leases contained provisions for its ascertainment. The first lease provided that the annual rental to be paid during the terms beginning April 1, 1920, and April 1, 1926, "shall be on the basis of ten (10) per cent. of the value of the property which shall be ascertained and determined by three (3) different disinterested appraisers: one selected by party of the first part and one selected by party of the second part; these two (2) to select the third. Said appraisers shall determine the value of the land and add thereto cost of constructing said building and repairs to same less two and one-half (2½%) per cent. per annum depreciation computed from the date of completion of said building."

The provision contained in the second lease is that the annual rental for the term beginning April 1, 1926, "Shall be on the basis of ten (10%) per cent. of the value of the property, which shall be ascertained and determined by three different disinterested appraisers—one selected by the Lessor and one selected by the Lessee; these two to select a third. Said appraisers, from the cost of constructing said additional story and repairs to same, shall deduct two and one-half (2½) per cent. per annum depreciation computed from the date of completion of said additional story. It is further understood that if the general taxes on the real estate covered by this lease and the lease dated October 31, 1913, on March 31, 1926, are higher or lower than what they are for the year following the completion of the additional story provided for herein, that the renewal privilege provided for herein shall be on the further condition that one-fourth of the increase or decrease in said general taxes at that date shall be charged to the Lessee in case of an increase and rebated by the Lessor in case said taxes are decreased."

The defendant Charles Phillips was the owner of the premises at the time the first lease was executed. The defendant Lillian Phillips, his wife, acquired said premises by deed from her husband after the execution of the first lease but before the execution of the second. She had in writing ratified and confirmed both leases before the suit was commenced. The defendant and appellant, the State Reserve Bank, claimed an interest in the premises at the time the suit was brought as holder of two certificates of purchase issued by the sheriff of the county on sales made by him of said premises under mortgage foreclosures in the state court. After futile negotiations to fix the rental to be paid for the new term, appellant in May, 1926, selected an appraiser as provided in the leases, and gave each of the defendants written notice of such selection and demanded that defendants select an appraiser as provided in the leases to fix the rent to be paid for the term ending March 31, 1932. No appraiser was ever selected by defendants or any or either of them. On December 2, 1926, appellee commenced this action.

■ On March 17, 1927, the order pro confesso above referred to was taken against appellant. On January 17, 1928, appellant filed the motion above mentioned to set aside the order pro confesso. The motion was supported by an affidavit of counsel wherein certain matters were stated tending to excuse the failure of appellant to plead in the action before the entry of the order pro confesso and tending to excuse the delay in filing the motion to set aside the order pro confesso.

In opposition one of counsel for appellee made and filed an affidavit in which certain of the matters stated in the affidavit of appellant's counsel tending to excuse the delay in moving to vacate the order pro confesso were controverted.

The trial court, as already said, denied appellant's motion and refused to set aside the order pro confesso.

It is sufficient to say that no explanation was given in the affidavit of counsel of appellant for the failure of appellant to apply before the entry of the order pro confesso for an enlargement of time in which to plead to the complaint, and no answer was tendered with the motion to set aside the order pro confesso.

It is obvious on the record before us that the refusal of the court below to set aside the order pro confesso was well within the limits of sound judicial discretion.

■ The court immediately upon denial of the motion to set aside the order pro confesso made and entered the following decree:

"This cause comes on on this seventeenth

day of January, 1928 for hearing (a) on the motion of defendants, Charles Phillips and Lillian M. Phillips, for additional time to plead and (b) final decree, and it appearing to the court by statements of counsel that the said defendants, Charles Phillips and Lillian M. Phillips, no longer have any interest in the subject-matter of this proceeding, their said motion is by the court hereby overruled.

"The court finds that a decree pro confesso was entered herein to-wit, on the 17th day of March, 1927, against each and all of the other defendants herein, to-wit, The State Reserve Bank, Central Trust Company and the Fraternal Aid Union and thereupon upon consideration thereof and of the statements and allegations set forth in the bill of complaint on file herein,

"It Is Ordered, Adjudged and Decreed as follows: .

"1. That the written lease under and by virtue of which the plaintiff now occupies Lots numbered 21, 23, 25 and 27 in Block D in English's Subdivision to the City of Wichita, Sedgwick County, Kansas, has been duly extended for the period of six years commencing on the first day of April, 1926, and ending on the thirty-first day of March, 1932.

"2. That the fair and reasonable rental value of and for said real estate during the term of the aforesaid extended period is the sum of five hundred fifteen dollars per month ascertained and computed and payable at the times and in the manner provided for in said lease.

"P. D. Gardiner, Esq., appeared in open court at and before the time of the entry of the above decree and then and there objected for and on behalf of the defendant, The State Reserve Bank, to paragraph numbered 2 of said decree as above set forth, and all parts thereof."

Notwithstanding counsel made no objection to paragraph 1 of the decree, as the above recital in the decree shows, said paragraph is assigned as error in this court. It is claimed the court in said paragraph extended the lease for the six-year period ending March 31, 1932, and it is argued on various grounds that such extension was error. The answer to this contention is short and conclusive. The paragraph complained of does not purport to extend the lease. It recites that the lease "has been duly extended." Appellee extended the lease on December 29, 1925, by giving the notice provided in the lease. The decree recites the fact of the extension, not for the purpose of establishing it, but as a foundation upon which to rest paragraph 2. It may be added that the extension of the leases is recognized as an accomplished fact in the affidavit of counsel made in support of appellant's motion to set aside the order pro confesso. It is stated in the affidavit that "about the month of October or November, 1927, this defendant agreed to the basis and amount of rental offered by plaintiff"; that "this affiant believes said rentals will approximate $800 per month"; that "this defendant is ready to name an arbitrator (appraiser) as provided by the lease."

The first point made against paragraph 2 of the decree pro confesso is that courts of equity may not under the guise of enforcing specific performance make new contracts for parties. Granting that paragraph 2 does in a sense decree specific performance of the agreement between the parties to the leases, it is clear that the case falls within the rule laid down by this court in Castle Creek Water Co. v. City of Aspen, 146 F. 8, 8 Ann. Cas. 660. Appellee by the notice given on December 29, 1925, extended the lease for the term beginning April 1, 1926, and ending March 31, 1932. After the extension appellee had the right to demand that the amount of the rent be ascertained as in the leases provided. Having failed to secure the co-operation of the lessor and the others interested in the premises, appellee had the right to ask the court to make the determination and the court possessed the power to grant the relief. The contention of appellant that the court was without power to determine the amount of the rent to be paid by appellee during the term is fully answered in Castle Creek Water Co. v. City of Aspen, supra. The court said: "Where in a contract of sale of real estate at a price to be fixed by appraisers chosen by the parties, the stipulation for the valuers is not a condition nor the essence of the agreement, but is subsidiary or auxiliary to its main purpose and scope, and the parties may not be left or placed in statu quo by a refusal to enforce the contract, a court of equity may determine the price itself, by its master or by appraisers of its own selection, and may enforce specific performance of the agreement of sale."

Appellant makes the further contention that, conceding the rule laid down in Castle Creek Water Co. v. City of Aspen to be applicable, the trial court notwithstanding the order pro confesso should have determined the rental value of the premises itself or have done so by a master or by appraisers of its own selection. The formulas for the ascertainment of the rent to be paid for the

premises during the term beginning April 1, 1926, are set out above. By pleading these formulas appellee stated a cause of action entitling it to the relief prayed for, but if these formulas had been the only matters alleged in the complaint respecting the rental value of the premises, it is clear the trial court would have been compelled to take testimony and hear evidence, notwithstanding the allegations of the complaint stood admitted under the order pro confesso. But the complaint contained this additional allegation: "That plaintiff paid all and entire the rentals due upon said premises up to the first day of April, 1926, to defendant, The Central Trust Company, pursuant to the contract hereinbefore referred to and has paid to it and for the rentals of said premises since said date the sum of Five Hundred Fifteen Dollars per month, which plaintiff alleges was and is the fair and reasonable monthly rental value of said premises for the period of six years commencing on the first day of April, 1926, as ascertained and fixed by the means provided for in said lease and otherwise. That each of the payments of monthly rentals so made by plaintiff as aforesaid to The Central Trust Company for rentals accruing since April 1, 1926, have been made without prejudice to the right of The Central Trust Company, which received and accepted them, and of the plaintiff, who made them, to thereafter and upon a hearing herein question the correctness and accuracy thereof."

The allegation that $515 per month "was and is the fair and reasonable monthly rental value of said premises for the period of six years commencing on the first day of April, 1926, as ascertained and fixed by the means provided for in said lease and otherwise," stood admitted by appellant under the order pro confesso, and for that reason the court below made and entered the decree pro confesso.

The rule in such cases is: "That 'when the allegations of a bill are distinct and positive, and the bill is taken as confessed, such allegations are taken as true without proofs,' and a decree will be made accordingly; but 'where the allegations of a bill are indefinite, or the demand of the complainant is in its nature uncertain, the certainty requisite to a proper decree must be afforded by proofs. The bill, when confessed by the default of the defendant, is taken to be true in all matters alleged with sufficient certainty; but in respect to matters not alleged with due certainty, or subjects which from their nature and the course of the court require an examina-tion of details, the obligation to furnish proofs rests on the complainant.'" Thomson v. Wooster, 114 U. S. page 111, 5 S. Ct. 791 (29 L. Ed. 105).

In the light of this rule can it be said that the above allegation of rental value is distinct, positive, and definite, and alleged with sufficient certainty?

The suit was brought because appellant and the other defendants would not appoint an appraiser to assist in ascertaining the rent to be paid for the term. The allegation that $515 was the monthly "rental value of said premises * * * as ascertained and fixed *by the means* provided for in said lease" is obviously not true, since the sum named was not arrived at by appraisers appointed as provided in the leases.

But construed liberally the language quoted may be fairly said to mean, as ascertained and fixed by the formulas contained in the leases. It will be assumed, as claimed by appellee, that the allegation states an ultimate fact, and that it is sufficient to support the decree, if it is distinct, positive, and certain within the rule of the Supreme Court above quoted. Tested by that rule, the allegation must distinctly, positively, and with certainty state that the sum, $515, was ascertained and fixed by the application of the formulas contained in the leases and set out in the complaint. It is not enough that the amount, $515, is certain; the method by which that sum was arrived at must also be certain. Can it be said that it may be fairly inferred from the above allegation of the complaint that the sum, $515, alleged as the rental value of said premises, was ascertained by taking into consideration only the factors named in the leases, in view of the words *"and otherwise"* standing at the end of the sentence? Why were these words added, and what is their significance?

Again, why were the words "fair and reasonable" used to qualify the alleged monthly rental value of the premises? These qualifying words must bear some unknown relation to the words "and otherwise," for otherwise their use was uncalled for and inappropriate. Rent ascertained and fixed as provided in the leases would be the result of the agreement. Whether it was fair and reasonable would be unimportant.

Appearing affirmatively as it does that something other than the factors contained in the leases was considered by appellee in arriving at the monthly rental value of the premises alleged in the complaint, we are of opinion the trial court should have proceeded in some appropriate way to ascertain for itself

the rent to be paid by appellee for the premises for the term beginning April 1, 1926, and ending March 31, 1932.

The decree is reversed, and the court below directed to proceed as herein indicated.